8/25/22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED PLANT AND PRODUCTION
WORKERS LOCAL 175 PENSION FUND,
*by James Kilkenny in his capacity as Trustee,*

Plaintiff,

-against-

J. PIZZIRUSSO LANDSCAPING CORP.,

Defendant.
-------------------------------------------------------------X

*No objections having been timely filed, the Report & Recommendation is adopted without modification. Clerk to enter judgment accordingly.*

**REPORT AND
RECOMMENDATION**
20 CV 2527 (RJD) (CLP)

s/RJD

**POLLAK**, Chief United States Magistrate Judge:

On June 5, 2020, plaintiff United Plant and Production Workers Local 175 Pension Fund ("plaintiff" or "the Fund"), by its trustee James Kilkenny, commenced this action against defendant J. Pizzirusso Landscaping Corp. ("defendant" or "Pizzirusso"), seeking to collect interim withdrawal liability payments pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, et seq., and to stay an arbitration proceeding, initiated by defendant, challenging the withdrawal liability assessment. (See Compl.[1]). Currently pending before this Court is plaintiff's motion for attorney's fees and costs associated with the arbitration proceeding and this federal action. (See Pl.'s Mem.[2]).

For the reasons set forth below, the Court respectfully recommends that plaintiff's motion be granted, and plaintiff be awarded $146,394.05 in fees and costs.

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed June 5, 2020, ECF No. 1.

[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of its Motion for Attorney's Fees, filed Sept. 6, 2021, ECF No. 33-14.

1

FACTUAL AND PROCEDURAL BACKGROUND

Although the background to the parties' dispute is set forth in the October 2, 2020 Order of the Honorable Raymond H. Dearie and in the decision of Arbitrator Judith A. LaManna, certain facts and some procedural history are necessary to determine the appropriate standard for considering plaintiff's fee request.  (See Dearie Ord.;[3] Arb. Dec.[4]).

James Kilkenny, trustee of plaintiff, filed the Complaint in this action on June 5, 2020, seeking to collect interim withdrawal liability payments based on Pizzirusso's partial withdrawal from the Fund in October 2017.  (See Compl. ¶¶ 1, 6, 13-15, 18).  As alleged in the Complaint, plaintiff is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3), established pursuant to various collective bargaining agreements between the Construction Council 175, Utility Workers of America, AFL-CIO (the "Union"), and various employers, including Pizzirusso.  (Id. ¶¶ 6, 7).  On October 1, 2017, Pizzirusso's employees ceased to be represented by the Union and thus Pizzirusso had no future obligation to make contributions to the Fund.  (Id. ¶¶ 14-15).

Upon determining that Pizzirusso had withdrawn from the Fund, plaintiff made an estimated assessment of withdrawal liability in the amount of $123,835 (the "First Assessment"), and informed defendant of its obligation to pay on October 23, 2018.  (Def.'s Mem.[5] at 3; Pl.'s Mem. at 1).  Defendant objected to the First Assessment, noting that it was based on "estimated" contribution data rather than "actual" contribution data.  (Def.'s Mem. at 4; Pl.'s Mem. at 1).

---

[3] Citations to "Dearie Ord." refer to Judge Dearie's Order, issued Oct. 2, 2020, ECF No. 25.
[4] Citations to "Arb. Dec." refer to Arbitrator Judith A. La Manna's Decision and Order, dated Feb. 12, 2021, ECF No. 33-12.
[5] Citations to "Def.'s Mem." refer to defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees, filed Sept. 6, 2021, ECF No. 34.

Neither party initiated arbitration and plaintiff subsequently withdrew the First Assessment. (Def.'s Mem. at 4; Pl.'s Mem. at 1).

Thereafter, plaintiff made a Second Assessment based on the actual contribution data in the amount of $232,536 and notified defendant of that revised amount on November 15, 2019. (Compl. ¶¶ 16-17; see Pl.'s Mem. at 1; Def.'s Mem. at 4-5). Defendant requested that plaintiff review the Second Assessment, and plaintiff responded on December 6, 2019, declining to alter the Second Assessment. (See Compl. ¶¶ 20-21). Thereafter, defendant continued to dispute the Second Assessment, resulting in several communications between the parties, but plaintiff maintained that the Second Assessment was correct. (See id. ¶ 24). Plaintiff took the position that since the Fund had responded to defendant's request for review on December 6, 2019, defendant was required to initiate arbitration within 60 days thereafter, or by February 4, 2020. (Id. ¶ 27).

On April 22, 2020, defendant initiated arbitration, arguing that due to the parties' various communications surrounding the First and Second Assessments, the deadline to initiate arbitration had not run. (Id. ¶ 31; Def.'s Mem. at 4-5). Although defendant had paid the first installment of its interim withdrawal liability, defendant failed to make its second interim withdrawal liability payment, which was due on April 14, 2020. (Compl. ¶¶ 39-43).

As a consequence, on June 5, 2020, plaintiff brought this action to recover the interim withdrawal liability payments that defendant had not yet paid and to enjoin the April 22, 2020 employer-initiated arbitration challenging the assessment of withdrawal liability, arguing that the arbitration demand was untimely and defective. (See id. ¶¶ 2, 31, 42, 52, 57-62. 72-76). Plaintiff alleged that defendant had failed to make interim withdrawal liability payments, which are due "whether or not" defendant adequately challenged the assessment in arbitration. (Id.

¶¶ 79-82); see 29 U.S.C. § 1401(d).  Plaintiff also sought a declaratory judgment that defendant was liable for all future interim withdrawal liability payments.  (Compl. ¶¶ 85-87).

On June 1, 2020, plaintiff filed a motion for a preliminary injunction, seeking to enjoin the arbitration proceeding.  (See ECF No. 6).  Defendant subsequently filed a motion on July 21, 2020, seeking to dismiss plaintiff's Complaint on the grounds that the District Court did not have jurisdiction because plaintiff's claims were subject to mandatory arbitration.  (See ECF No. 10).

On October 2, 2020, the Honorable Raymond J. Dearie issued an Order, denying both motions, staying proceedings in the federal action pending further Order of the court, and referring to arbitration the question of whether defendant timely demanded arbitration.  (See Dearie Ord.).  The question of whether defendant sought arbitration in a timely fashion was referred to Arbitrator La Manna consistent with the court's preference for having arbitrators decide issues arising under the MPPAA in the first instance.  (See Dearie Ord. (citing T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n, 756 F.2d 939, 945 (2d Cir. 1985))).

While the question of the timeliness of the arbitration demand was pending before the arbitrator, defendant made all of its withdrawal liability payment installments, with the exception of one.[6]  The final payment was made on March 12, 2021, after the arbitrator's decision was issued and after plaintiff issued a 60-day Notice letter which notified defendant that the payment had been due on January 14, 2021.  (See Def.'s Mem. at 10; ECF Nos. 35-2, 35-11).

---

[6] Defendant consistently failed to make its withdrawal payments in accordance with the schedule set by the Fund, requiring plaintiff to issue late notices in each instance.  The first payment was due January 14, 2020 and was not paid in full until February 7, 2020. (Compl. ¶¶ 37, 39-40).  The second installment was due on April 14, 2020 and was not paid until June 8, 2020.  (Compl. ¶ 42; ECF No. 35-5).  The third and fourth installments were due July 14, 2020 and January 14, 2021, respectively, and appear to have both been paid on March 12, 2021 since defendant issued two checks on that date.  (See ECF Nos. 16-28; 35-2, 35-11).

On February 12, 2021, Arbitrator Judith A. La Manna issued her decision ("the Decision") in favor of plaintiff, finding that the demand filed by defendant was "neither timely nor adequate" and dismissing the arbitration. (Arb. Dec. at 20). On March 9, 2021, after plaintiff notified the court of the Decision, plaintiff thereafter sought enforcement of the Decision[7] and an award of attorney's fees. (See ECF Nos. 26-27). Plaintiff's motion for attorney's fees was fully briefed on September 6, 2021. (See Pl.'s Mem.; Def.'s Mem.; Pl.'s Reply[8]). On September 7, 2021, Judge Dearie referred the motion for fees to the undersigned for a Report and Recommendation.[9]

## DISCUSSION

In this fee application, plaintiff requests a total of $207,987.95 in attorney's fees and costs, consisting of $183,616.00 in attorney's fees and $24,371.95 in costs. (Smith Decl.[10] ¶ 55; Pl.'s Reply at 2; Smith Reply Decl.[11] ¶ 21). Before assessing the reasonableness of plaintiff's

---

[7] Not only did Arbitrator La Manna dismiss the arbitration as untimely, she also agreed with plaintiff that the Fund's Second Assessment was the proper withdrawal liability assessment rather than the First Assessment which defendant urged was the correct amount. (See Arb. Dec. at 14). Thus, defendant was required to pay the amount set forth in the Second Assessment—$232,536—rather than the $123,835 amount calculated in the First Assessment. (Id. at 14-15). On March 9, 2021, plaintiff submitted a pre-motion conference letter seeking to confirm the Decision by Arbitrator La Manna, pursuant to 29 U.S.C. § 1401(b)(2), so that the Fund could collect any remaining amounts owed, including fees and costs. (See ECF No. 27). However, by the time plaintiff filed the actual motion, defendant had paid all overdue withdrawal liability and thus, there was no need for plaintiff to seek enforcement of any decision regarding which assessment amount was owed. (See Pl.'s Mem. (seeking only "a mandatory award of attorney fees and costs")).

[8] Citations to "Pl.'s Reply" refer to plaintiff's Reply Memorandum in Support of its Motion for Attorney's Fees, filed Sept. 6, 2021, ECF No. 36.

[9] Defendant appears to contest Arbitrator La Manna's Decision, stating that she was "fundamentally incorrect" in some of her findings and arguing that the effect of Arbitrator La Manna's Decision "will greatly increase the cost of litigation and prevent the free flow of information between counsel" going forward. (Def.'s Mem. at 17-19). Plaintiff disagrees with defendant's arguments as to the merits of Arbitrator La Manna's findings. (Pl.'s Reply at 8-9). However, because there is no pending motion to modify or vacate the arbitrator's decision, this Court has not included a detailed discussion of the parties' arguments on the merits, but only addressed plaintiff's request for attorney's fees.

[10] Citations to "Smith Decl." refer to the Declaration of Jennifer Smith, Esq., in Support of Plaintiff's Motion for Attorney Fees, dated Aug. 13, 2021, ECF No. 33-1.

[11] Citations to "Smith Reply Decl." refer to the Reply Declaration of Jennifer Smith, Esq. in

fee request, the Court must determine the appropriate standard to be applied.  Plaintiff argues that 29 U.S.C. § 1132(g)(2), in conjunction with 29 U.S.C. § 1451(b), provides the standard that governs a fee award in this case, while defendant argues that the standard set forth in 29 C.F.R. § 4221.10, which is applied in the context of an arbitration proceeding, is appropriate and would require a finding that defendant's arguments were frivolous or made in bad faith before fees can be awarded.  (Compare Pl.'s Reply at 3, with Def.'s Mem. at 2).  Plaintiff asserts that, should the court find that Section 1132(g)(2) does not apply, plaintiff would still be entitled to fees under either the arbitration standard argued for by defendant, or the standards set forth in 29 U.S.C. §§ 1132(g)(1) & 1451(e).  (Pl.'s Reply at 6).

I.   Standards For Fee Awards Under ERISA

    A.   Withdrawal Liability Under ERISA

       The MPPAA was designed to deal with the problem of employer withdrawal from multiemployer plans, which had the effect of "reduc[ing] a plan's contribution base," pushing "the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities."  Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 216 (1986) (citations and quotations omitted).  Under the MPPAA, an employer who withdraws from participation in a multiemployer pension plan is required to pay its proportionate share of the plan's unfunded vested benefits.  29 U.S.C. §§ 1381(a), 1399; see I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc., No. 92 CV 0597, 2002 WL 999303, at *3 (S.D.N.Y. May 15, 2002), aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc., 94 F. App'x 850 (2d Cir. 2003).  As the Second Circuit noted in ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc., "[t]he purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate

_____

Further Support of Plaintiff's Motion for Attorney Fees, filed Sept. 6, 2021, ECF No. 35.

the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" 846 F.2d 879, 881 (2d Cir. 1988) (quoting H.R. Rep. No. 96-869, Part I, 96th Cong., 2d Sess. 51 (1980) reprinted in 1980 U.S.C.C.A.N. 2918, 2935). A withdrawal liability assessment "ensures that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Pension Ben. Guar. Corp. v. R.A. Gray Co., 467 U.S. 717, 720 (1984); see also Trustees of Colorado Pipe Industry v. Howard Electric, 909 F.2d 1379, 1382-83 (10th Cir. 1990) (explaining that the MPPAA amendments to ERISA were necessary to deal with the concern that employers "could withdraw from multiemployer pension plans without paying their share of the unfunded vested benefit liability, thereby threatening the solvency of such plans").

Under ERISA, a "complete withdrawal" occurs when an employer permanently ceases to have an obligation to contribute to a plan or ceases all covered operations." 29 U.S.C. § 1383. A "partial withdrawal" occurs when, in a given plan year, there is (1) "a 70-percent contribution decline," by the employer or (2) "a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385(a). Upon either a partial or complete withdrawal, the plan sponsor is empowered to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382. Here, plaintiff alleged that defendant made a partial withdrawal. (Compl. ¶ 1; Arb. Dec. at 4-7).[12]

---

[12] The Court notes that the distinction between a "complete" and "partial" withdrawal impacts only the amount of withdrawal liability due to the plan. See 29 U.S.C. § 1381(b)(1); Hoeffner v. D'Amato, No. 09 CV 3160, 2016 WL 8711082, at *3 (E.D.N.Y. Sept. 30, 2016) (noting that the "rules governing withdrawal liability . . . apply any time an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal" (quotations and citation omitted)). Since the Court's inquiry is limited to the proper standard for attorney's fees, the fact that a partial, rather than complete,

Once the plan sponsor notifies the employer regarding its withdrawal liability, the employer has 90 days to request that the sponsor review its withdrawal liability determination. 29 U.S.C. §§ 1399(b)(2), 1401(b)(1).  If the employer disputes the alleged withdrawal liability, the employer must initiate arbitration within 60 days of the date of notification or waive its right to contest the amount of withdrawal liability assessed by the plan sponsor; if that right is waived, a district court may not make an independent determination as to the reasonableness of the calculations.  29 U.S.C. §§ 1401(a)(1), (b)(1); Gesualdi v. Seacoast Petroleum Products, Inc., 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); see also Trustees of Loc. 813 Ins. Tr. Fund v. Freedom Demolition Inc., No. 13 CV 02701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) (noting that "[b]y failing to initiate an arbitration proceeding within sixty days[,] . . . defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs"); New York State Teamsters Conf. Pension & Ret. Fund v. McNicholas Transp. Co., 658 F. Supp. 1469, 1476 (N.D.N.Y. 1987) (holding that "defendant's failure to demand arbitration in a timely manner precludes it from contesting the fact or amount of withdrawal liability"), aff'd, 848 F.2d 20 (2d Cir. 1988).  "Failure to initiate arbitration within this statutory period has a harsh result – the amount demanded by the pension plan sponsor becomes due and owing."  Trustees of Colorado Pipe Industry v. Howard Electric, 909 F.2d at 1385.

If a defendant fails to initiate arbitration and fails to remit payment in accordance with the schedule set forth by the plan, the plan "may bring an action in a State or Federal court of competent jurisdiction for collection."  29 U.S.C. § 1401(b)(1); Board of Trs. of Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp., 43 F.3d 852, 855 (3d Cir. 1994) (noting that "if an employer misses a scheduled payment, the fund may seek to collect by filing a collection

_____

withdrawal was made in this case does not change the Court's analysis.

action"); see Trustees of the Suburban Teamsters of N. Illinois Pension Fund v. Nagel Trucking & Materials, Inc., No. 11 C 2775, 2011 WL 6792767, at *5 (N.D. Ill. Dec. 22, 2011) (stating that employer must make payments "according to the schedule determined by the Fund"). "Indeed, no supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration." Trustees of the Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc., No. 13 CV 198, 2016 WL 5879612, at *2 (E.D.N.Y. Mar. 9, 2016) (citing Rao v. Prest Metals, 149 F. Supp. 2d 1, 9-10 (E.D.N.Y. 2001)), report & recommendation adopted, 2016 WL 1275041 (E.D.N.Y. Mar. 31, 2016).

B.  Fee Awards Under ERISA

The "American Rule" generally requires each party to a lawsuit to shoulder the burden of its own attorney's fees and costs, unless otherwise authorized by statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). ERISA contains a number of specific fee-shifting provisions which apply in different circumstances.

1)  Mandatory Fees Under Section 1132(g)(2) and 1451(b) of ERISA

Section 1132(g)(2) of ERISA contains a mandatory fee provision which applies when a plan fiduciary successfully brings an action to collect delinquent contributions. 29 U.S.C. § 1132(g)(2). Where a "judgment in favor of the plan is awarded" in an action brought to recover unpaid contributions pursuant to 29 U.S.C. § 1145, the court:

> shall award the plan (A) the unpaid contributions, . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

ERISA also contains a separate provision relating to the assessment of attorney's fees in connection with an action brought by a fund seeking to recover unpaid withdrawal liability. See

29 U.S.C. § 1451(b).  Section 1451(b) provides:

> In any action under this section to compel an employer to pay
> withdrawal liability, any failure of the employer to make any
> withdrawal liability payment within the time prescribed shall be
> treated in the same manner as a delinquent contribution (within the
> meaning of section 1145 of this title).

Thus, courts have cited these provisions in stating that ERISA provides for mandatory attorney's fees in actions brought by a fund to "compel an employer to pay withdrawal liability." Sofco Erectors, Inc. v. Trustees of Ohio Operating Eng'rs Pension Fund, 15 F.4th 407, 434 (6th Cir. 2021); see Central States, Se. & Sw. Areas Pension Fund v. Nitehawk Exp., Inc., 223 F.3d 483, 496 (7th Cir. 2000) (holding fees mandatory under 1132(g)(2) in action to recover withdrawal liability); Connors v. Petitte Bros. Min. Co., Inc., 70 F.3d 637, 637 (D.C. Cir. 1995) (per curiam) (affirming district court holding that the plan was entitled to attorney's fees and costs and stating that "[t]he statute is clear . . . that such an award is mandatory in an action to enforce withdrawal liability" (citing 29 U.S.C. §§ 1132(g)(2) and 1451(b))); see also Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Bellezza Co., 57 F. App'x 972, 975 (3d Cir. 2003); Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Mar-Len, Inc., 30 F.3d 621, 624 n.4 (5th Cir. 1994); Trustees of Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 931-32 (9th Cir. 1986).

This Court has uniformly applied the Section 1132(g)(2) mandatory fee provision in awarding fees where the fund commences an action to compel the payment of withdrawal liability.  See, e.g., Division 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 620-21 (E.D.N.Y. 2017) (citing 29 U.S.C. § 1132(g)(2) as the standard for attorney's fees in action to recover withdrawal liability payments); Trustees of Local 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 589-90

10

(E.D.N.Y. 2011) (stating that fees are "mandatory" in "an action to collect withdrawal liability");
see also I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc., No. 92 CV 0597, 2003 WL 135797, at *2
(S.D.N.Y. Jan. 17, 2003) (stating that plaintiffs are "entitled" to attorney's fees in action to
recover withdrawal liability).

  2) Discretionary Fees Under Sections 1132(g)(1) and 1451(e) of ERISA

  Section 1132(g)(1) of ERISA provides that in actions involving delinquent contributions,
brought "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a
reasonable attorney's fee and costs of action to either party."  Accordingly, in any action "other
than an action to recover a delinquent payment, an award of attorney's fees and costs is
discretionary."  United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan
v. Yahn & McDonnell, Inc., 787 F.2d 128, 134-35 (3d Cir. 1986), abrogated on other grounds by
Concrete Pipe & Prod. of California, Inc. v. Construction Laborers Pension Tr. for S. California,
508 U.S. 602 (1993); see New York State Teamsters Conf. Pension & Ret. Fund v. Boening
Bros., 92 F.3d 127, 135 (2d Cir. 1996).  In order to be awarded fees under Section 1132(g)(1), a
party need only have achieved "some success on the merits."  Hardt v. Reliance Standard Life
Ins. Co., 560 U.S. 242, 256 (2010).

  Similarly, 29 U.S.C. § 1451(e) provides that "the court may award all or a portion of the
costs and expenses incurred," including attorney's fees, to the "prevailing party" in connection
with any action relating to a multiemployer plan other than an action by the fund wherein a
judgment is entered in favor of the fund to recover withdrawal liability payments.  Thus,
employers may recover attorney's fees under the Section 1451(e) standard if they are deemed the
"prevailing party" in cases involving withdrawal liability.  The decision to award fees under this
section "is committed to the discretion of the district court."  Laborers' Pension Fund v. W.R.

Weis Co. Inc., 879 F.3d 760, 768 (7th Cir. 2018); Anita Foundations, Inc. v. ILGWU Nat'l Ret.

Fund, 902 F.2d 185, 188 (2d Cir. 1990) (reviewing award of fees for abuse of discretion).

"Although the fee-shifting provisions are available in withdrawal liability actions, when the

prevailing party is the employer, 'courts exercise cautiously the discretionary power to award

fees.'" Sigmund Cohn v. District No. 15 Machinists Pension, 804 F. Supp. 490 (E.D.N.Y. 1992)

(citations omitted) (applying the five-factor test and denying the prevailing employer's request

for fees, finding that the fund had not exhibited bad faith or culpability).

        Both Section 1132(g)(1) and Section 1451(e) are governed by the same five-factor

standard, where courts consider (1) the offending party's culpability or bad faith; (2) the

offending party's ability to satisfy an attorney's fee award, (3) deterrence, (4) the relative merits

of the party's positions, and (5) "whether the action sought to confer a common benefit on a

group of pension plan participants." See Anita Foundations, Inc. v. ILGWU Nat'l Ret. Fund,

902 F.2d at 191 (noting that Section 1451(e) authorizes attorney's fees to a prevailing party

without regard to whether it is an employer or a plan fiduciary and applying the five-factor test

developed under 1132(g)(1)).

        3)   Standard Under the Arbitration Act

        Regulations promulgated under ERISA establish procedures for arbitrations governing

"withdrawal liability disputes." 29 C.F.R. § 4221.1(b).  Pursuant to these regulations, the

arbitrator may award fees if it makes a finding of bad faith on the part of the party that initiated

the arbitration or finds that a party "engage[d] in dilatory, harassing, or other improper conduct."

29 C.F.R. § 4221.10(c).  The regulation provides that the:

                arbitrator may require a party that initiates or contests an
                arbitration in bad faith or engages in dilatory, harassing, or other
                improper conduct during the course of the arbitration to pay
                reasonable attorneys' fees of other parties.

Id.

   C.  <u>Analysis</u>

     As noted, the parties disagree as to the appropriate standard to be applied in considering plaintiff's fee request in this case.  Plaintiff argues that the Court should apply the standard set out in 29 U.S.C. § 1132(g)(2), both because it is "the law of the case" and because it is the appropriate standard to use here where the action was brought in response to defendant's refusal to make interim withdrawal liability payments.  (<u>See</u> Pl.'s Mem. at 3 (citing 29 U.S.C. § 1132(g)(2)); Pl.'s Reply at 3).

     Defendant does not address plaintiff's arguments regarding the law of the case or the district court's specific reference to Section 1132(g)(2) in its earlier Order denying the motion for preliminary injunction.  Instead, defendant argues that because the district court referred the case to arbitration and there were substantive issues, including issues subject to mandatory arbitration under the MPPAA, that had to be decided before the timeliness of defendant's arbitration request could be determined, the arbitration standard should apply here.  (Def.'s Mem. at 12-13).  Defendant further argues that although Arbitrator La Manna's Decision held that defendant's request for arbitration was untimely, arbitration was necessary in this case and the Fund's request for fees should therefore be assessed under the arbitration standard.  (<u>Id.</u> at 13).  Lastly, defendant contends that, since plaintiff did not "timely file a motion to modify" Arbitrator La Manna's Decision, fees cannot be awarded.  (<u>Id.</u> at 8).

     As set forth below, the Court respectfully recommends that fees should be awarded pursuant to Sections 1132(g)(2) and 1451(b).  In the alternative, the Court respectfully recommends that fees should be awarded under either the discretionary standards of Section 1132(g)(1) and Section 1451(e), or the arbitration standard set forth in 29 C.F.R. § 4221.1(c).

1) Law of the Case

Plaintiff relies on the decision of the district court denying plaintiff's motion for a preliminary injunction as setting the appropriate standard for an award of fees. There, the judge, in denying plaintiff's motion for a preliminary injunction, expressly stated that plaintiff would not suffer irreparable harm because plaintiff would be able to seek all "remedies includ[ing] 'reasonable attorney's fees and costs of the action.'" (Dearie Ord. at 7 (citing 29 U.S.C. § 1132(g)(2))). Plaintiff argues that by referring to Section 1132(g)(2), the district court had already considered the standard for attorney's fees in this action and since it is law of the case, it should be applied in determining the fee award.

The "law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) (quoting United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002)). Courts have applied the law of the case doctrine in ERISA cases. See Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted); L.I. Head Start Child Dev. Servs., Inc. v. Economics Opportunity Comm'n of Nassau Cnty., Inc., 820 F. Supp. 2d 410, 416 (E.D.N.Y. 2011), aff'd, 710 F.3d 57 (2d Cir. 2013); Novick v. Metropolitan Life Ins. Co., 914 F. Supp. 2d 507, 528 (S.D.N.Y. 2012). However, courts have declined to apply the law of the case doctrine where the court "specifically reserved judgment on [the disputed] point." Novick v. Metropolitan Life Ins. Co., 914 F. Supp. 2d at 528.

Since the law of the case doctrine is "discretionary," and it is unclear whether the district court considered the arguments that defendant now makes in opposition to an award of fees and

14

rendered a decision on this specific question, this Court has, in an abundance of caution, addressed the parties' other contentions regarding the proper standard to be applied in this case. See L.I. Head Start Child Dev. Servs., Inc. v. Economics Opportunity Comm'n of Nassau Cnty., Inc., 820 F. Supp. 2d at 416.

2) Section 1132(g)(2) Applies When Suit is Brought to Collect Interim Liability Payments

a) The Complaint Seeks to Collect Withdrawal Liability

As stated above, Section 1451(b) provides that "any failure of the employer to make *any* withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b) (emphasis added). Thus, because a failure to make "any withdrawal liability payment," including a failure to timely make an interim withdrawal payment, is considered to be a failure to pay delinquent contributions, courts have assessed attorney's fees and costs against the employer under Section 1132(g)(2). (See supra at 9-11). Therefore, the first issue to address is whether this case is an action to recover withdrawal liability, or an action to modify the arbitrator's Decision as defendant contends. (See Def.'s Mem. at 10).

Courts have consistently distinguished between "an original action to recover withdrawal liability" and actions "to enforce a judgment" obtained through arbitration by looking to the allegations in the complaint to determine the basis for the plaintiff's claims. See Board of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp., 377 F.3d 288, 296 (3d Cir. 2004) (noting that the complaint was "replete with statements indicating that the action was brought to collect withdrawal liability"); see also Trustees of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Akwesasne Constr., Inc., No. 17 CV 1420, 2018 WL 1997979, at *4 (E.D.N.Y. Apr. 27, 2018) (discussing plaintiff's

claims and noting distinction between ERISA action to collect delinquent contributions to an ERISA plan and action to confirm an arbitration award in determining attorney's fee award standard); <u>Trustees of The New York City Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.</u>, No. 13 CV 2716, 2014 WL 100008, at *2, *4 (S.D.N.Y. Jan. 10, 2014) (same).

Looking to the allegations in the Fund's Complaint, the Complaint in this case clearly states that plaintiff seeks "to collect interim withdrawal liability payments" from defendant. (Compl. ¶ 1). Naturally, the Complaint makes no reference to enforcement of a prior arbitration award since the court's referral to arbitration occurred after the Complaint was filed and after the federal action was commenced. Thus, the allegations in the Complaint demonstrate that the action as filed was not an action brought to confirm or modify an arbitration decision.[13]

   b)  <u>Section 1132(g)(2) Applies Because the Employer Failed to Timely Make Interim Payments</u>

Under the MPPAA, an employer is required to pay a withdrawal liability assessment

---

[13] Defendant also contends that because Arbitrator La Manna did not award attorney's fees, and plaintiff did not seek to modify the arbitrator's decision within 30 days as required by the statute, plaintiff is now precluded from requesting attorney's fees. (Def.'s Mem. at 11-12 (citing 29 U.S.C. § 1401(b)(2))). However, contrary to defendant's argument, plaintiff never requested a fee award from the Arbitrator. Since plaintiff did not request fees and the issue was never addressed by the Arbitrator, plaintiff's current request for fees cannot be considered an attempt to modify or enforce Arbitrator La Manna's decision. (<u>See</u> Arb. Dec.); <u>In re Mines</u>, 630 B.R. 107, 118 (Bankr. E.D.N.Y. 2021) (stating that, in order for an issue to have been considered decided in a prior arbitration, "it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding," and noting that the "Award is devoid of any specific factual findings and does not reference any specific statute or legal principle" as to the issue); <u>Emilio v. Sprint Spectrum L.P.</u>, 68 F. Supp. 3d 509, 516 (S.D.N.Y. 2014) (stating that the proponent must show "with clarity and certainty that the same issues were resolved" in order to foreclose judicial determination of issue post-arbitration). Instead, plaintiff is seeking attorney's fees in connection with the Fund's efforts to collect withdrawal liability payments, which necessarily include the time expended in the arbitration proceeding Ordered by the Court. Indeed, this case is unlike other actions to enforce or modify an arbitration award, because it did not seek "to convert[] a final award into a court judgment," <u>Roca v. Sotheby's, Inc.</u>, No. 94 CV 0966, 1995 WL 362499, at *4 (E.D.N.Y. June 12, 1995), but rather was commenced as an independent action to recover withdrawal liability payments.

16

according to a schedule set by the fund, even where the employer has made a "request for review or appeal of determinations of the amount of such liability." 29 U.S.C. § 1399(c)(2).  This "captures the MPPAA's 'pay now, arbitrate later' principle."  Central States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc., 223 F.3d at 496.  As the court in Central States explained, the purpose behind the MPPAA's interim payment provision:

> reflects Congress['s] concern that thinly capitalized employers who are not forced to pay prior to arbitration may empty their pockets by the time an arbitrator determines they owe money to the Fund. . . . So the interim payment accomplishes a goal entirely different from the arbitration on the merits.  As such, the Fund's victory in securing interim payments cannot be undone by a loss at the merits stage.

Id. at 496.

Courts have held that, even where an arbitration will later decide the merits of withdrawal liability, a plaintiff may still bring an action in federal court to recover interim withdrawal liability payments, which an employer is required to pay regardless of whether the employer is eventually successful on the merits.  29 U.S.C. § 1399(c)(2); see Iron Workers Dist. Council of S. Ohio & Vicinity Pension Fund v. Lykins Reinforcing, Inc., 484 F. Supp. 3d 544, 547 (S.D. Ohio 2020) (noting that, even where arbitration was timely filed, plaintiff fund could still bring action in federal court to recoup interim payments, although liability would later be assessed in arbitration); see also Board of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Courtad Const. Sys., Inc., 439 F. Supp. 2d 574, 577-78 (E.D. Va. 2006) (distinguishing between action to recover interim withdrawal payments and arbitration action to determine liability where plaintiff filed suit for interim payments while arbitration was pending).

Further, courts considering a request for attorney's fees in cases brought to recover interim liability payments have applied the Section 1132(g)(2) standard even where an

17

arbitration ultimately decides the merits of the dispute.  See Board of Trs., Sheet Metal Workers'
Nat'l Pension Fund v. Courtad Const. Sys., Inc., 439 F. Supp. 2d at 577-78 (applying Section
1132(g)(2) ERISA standard and distinguishing between action to recover interim withdrawal
payments and arbitration action to determine liability); cf. Board of Trs. of Trucking Emps. of N.
Jersey Welfare Fund, Inc.--Pension Fund v. Canny, 900 F. Supp. 583, 593 (N.D.N.Y. 1995)
(noting that "notwithstanding any request for arbitration," the defendants were in default because
they failed to make interim withdrawal liability payments and relying on the ERISA attorney's
fee standard set out in Section 1132(g)(2)); Trustees of Plumbers & Pipefitters Nat'l Pension
Fund v. Mar-Len, Inc., 864 F. Supp. 599, 610 (E.D. Tex. 1994) (applying Section 1132(g)(2)
standard in action to confirm arbitration award where defendant failed to make interim liability
payments).

  Here, at the time the Complaint in this case was filed and prior to the referral to
arbitration, defendant had failed to make the required interim withdrawal liability payments
pursuant to the Fund's schedule and, as found by the arbitrator, failed to timely initiate
arbitration.  (See Compl. ¶¶ 42-45; Arb. Dec.).  Indeed, even after the arbitration was found to be
untimely, defendant waited to pay the final installment until March 12, 2021, despite the fact that
it was due on January 14, 2021, requiring plaintiff to issue yet another 60-Day Notice.  (See ECF
Nos. 35-2, 35-11).

  Accordingly, because the Complaint states a claim to collect withdrawal liability and
defendant failed to make the interim payments as set forth in the schedule set by plaintiff, this
case falls within Sections 1451(b) and 1132(g)(2) and mandates an award of fees.[14]

---

[14] Defendant argues that applying the arbitration standard will prevent forum shopping between
court proceedings and arbitration.  (Def.'s Mem. at 13-14 (citing Rootberg v. Central States, Sw. & Se.
Areas Pension Fund, 856 F.2d 796, 801 (7th Cir. 1988) (reversing an award of fees to the plaintiff
employer, stating that the employer "started down the arbitration route; they should have continued on

c)   Judgment in Plaintiff's Favor

Defendant argues that at this point, it has paid all of the withdrawal liability owed, and thus there is no need for the court to compel payment.  Defendant contends that in the absence of a "judgment in favor" of plaintiff as required by Section 1132(g)(2), plaintiff should not receive attorney's fees even if the standard under Section 1132(g)(2) otherwise applies.  (Def.'s Mem. at 9-10).

As noted supra, a failure to make "any withdrawal liability payment," including a failure to timely make an interim withdrawal payment, subjects a defendant to certain mandatory remedies, including the imposition of fees.  A defendant cannot avoid attorney's fees and costs "simply by paying the [withdrawal liability] before entry of judgment."  See Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995).  Even when an action is "dismissed as moot" because the plaintiff "won the ultimate issue, which is to compel the payment of the withdrawal liability," see Lads Trucking Co. v. Board of Trs. of W. Conf. of Teamsters Pension Tr. Fund, 777 F.2d 1371, 1375 (9th Cir. 1985), or where the parties settled, courts have still awarded fees pursuant to Sections 1132(g)(2) and 1451(b).  See Trustees of Bricklayers & Allied Craftworkers Loc. 5 New York Reitrement v. Helmer-Cronin Const., Inc., No. 03 CV 0748, 2005 WL 3789085, at *3 (S.D.N.Y. Oct. 24, 2005); see also Trustees of E. States Health & Welfare Fund v. Crystal Art Corp., No. 00 CV 0887, 2004 WL 1118245, at *4 (S.D.N.Y. May 19, 2004)

---

that route rather than switch to the courts")))  However, defendant's concern is misplaced and Rootberg is inapposite.  First, ERISA is clear that disputes "shall be resolved through arbitration," unless a demand for arbitration is not made within the time period, in which case, and only then, "may" a plaintiff "bring an action in a State or Federal court of competent jurisdiction."  See 29 U.S.C. §§ 1401(a), (b)(1).  In this case, the statute authorized plaintiff to file this federal action because defendant failed to timely initiate arbitration.  Moreover, unlike in Rootberg, where the employer initiated arbitration and was the successful party, here the Fund initiated an action to recover withdrawal liability payments and ultimately succeeded, placing the case squarely within Section 1132(g)(2).

(awarding fees where parties settled in administrative action initiated after suit was filed because the parties "made no such agreement with respect to . . . attorney's fees"), aff'd, 132 F. App'x 390 (2d Cir. 2005).  But cf. Bernhard v. Central Parking Sys. of New York, Inc., 101 F. Supp. 3d 213, 216 (E.D.N.Y. 2015) (denying fees to the plaintiff-fund in suit to collect delinquent contributions where parties settled).[15]

Clearly, here, defendant violated ERISA by failing to make interim withdrawal liability payments at a time when plaintiff was entitled to those payments.  While defendant may ultimately have made all of its payments, defendant had not timely made all of its payments at the time the Complaint was filed, in that it had failed to make its second installment payment pursuant to the payment schedule set by plaintiff.  (Compl. ¶¶ 42-46).  Further, because defendant failed to initiate arbitration in a timely manner, it was precluded from challenging plaintiff's payment schedule.  Since improperly assessed withdrawal liability payments could have later been recouped by the defendant if defendant had ultimately prevailed on a timely challenge to the liability assessments, these payments were owed according to the schedule set by the Fund and defendant's refusal to pay on time was in violation of its obligations under ERISA.  See 29 U.S.C. § 1401(d).

To deny the Fund an award of fees where the employer fails to make its interim

---

[15] Although the court denied fees in Bernhard because no judgment had been entered, the circumstances were factually distinguishable.  The parties in Bernhard reached an amicable settlement early on before any significant litigation had occurred, whereby the defendant agreed to pay the fund the outstanding delinquent contributions and therefore no court action was required.  101 F. Supp. 3d at 214.  Here, defendant failed to timely satisfy its obligation to pay withdrawal liability, forcing plaintiff to litigate the Fund's entitlement to payments and to arbitrate the issue of the timeliness of the request for arbitration.  As the Second Circuit noted in Iron Workers District Council of Western. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., Section 1132(g)(2) "does not require that a favorable judgment be awarded on each of the four items of relief specified therein."  68 F.3d at 1507.  Here, because one of plaintiff's requests for relief in the Complaint seeks attorney's fees, the fact that defendant finally made all of its withdrawal payments and a formal judgment requiring payment is no longer necessary should not excuse defendant from its  obligation to pay fees and costs incurred as a result of the arbitration proceeding and this suit.

20

withdrawal payments in accordance with the schedule only to pay in full before judgment is entered would defeat the "MPPAA's 'pay now, arbitrate later' principle," and run the risk that employers who are allowed to delay payment until the conclusion of the arbitration proceedings would not have the money necessary to pay.  Central States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc., 223 F.3d at 495-96.  It is for this reason that courts have awarded fees even when the fund ultimately loses at the merits stage.  Id. at 496; see also JLNW, Inc. v. National Ret. Fund, No. 17 CV 5095, 2019 WL 4688690, at *6 (S.D.N.Y. Sept. 25, 2019) (applying mandatory ERISA standard and allowing for attorney's fees to plaintiff-fund where defendant's action to vacate the arbitration decision was still pending during simultaneous action for unpaid withdrawal liability).

Additionally, in the Complaint, plaintiff not only sought "damages to the Fund consisting of all overdue interim withdrawal liability payments as of the date of the judgment, plus interest and liquidated damages on [the] same," but the Fund also sought an "award of attorneys' fees and reasonable costs incurred by the Fund in collecting withdrawal liability" against defendant. (Compl. at 12-13).  As the Second Circuit has noted, where a fund has sued seeking "all of these modes of compensation," including interest, liquidated damages, and attorney's fees, the fund is "entitled to 'a judgment in favor of the Plan' with respect to any of them that had not been fully satisfied."  Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d at 1507; see Trustees of Bricklayers & Allied Craftworkers Loc. 5 New York Reitrement v. Helmer-Cronin Const., Inc., No. 03 CV 0748, 2005 WL 3789085, at *3 (S.D.N.Y. Oct. 24, 2005) (noting that, although the parties reached a settlement regarding the "unpaid contributions and interest," plaintiff was still entitled to attorney's fees because "the settlement does not fully encompass the relief mandated by Section

21

1132(g)(2)" (alterations omitted)).  Indeed, "the judgement [sic] under § 1132(g)(2) will

necessarily reflect fewer than all of the forms of relief available under that provision if partial

relief has been obtained by way of paid-up contributions."  Iron Workers Dist. Council of W.

New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68

F.3d at 1507; see Parkhurst v. Armstrong Steel Erectors, Inc., 901 F.2d 796, 799 (9th Cir. 1990)

(awarding attorney's fees although plaintiff only prevailed on issue of owed interest and failed

on issued of liquidated damages).[16]

Thus, for all these reasons, the Court finds that the arbitration standard as advocated by

defendant does not apply, and respectfully recommends that in assessing plaintiff's motion for

attorney's fees, the court should apply the mandatory fee provision set out in Sections 1132(g)(2)

and 1451(b).

3) Plaintiff is Entitled to Fees Under ERISA's Discretionary Standards or the
   Arbitration Standard

Even if this Court were to conclude for some reason that the mandatory fee standard of

Sections 1132(g)(2) and 1451(e) does not apply in this case, the Court would still recommend

that plaintiff be awarded fees under either the discretionary standard of Sections 1132(g)(1) and

1451(e), or the bad faith arbitration standard set out in 29 C.F.R. § 4221.1(b).

As set forth previously, both Sections 1132(g)(1) and 1451(e) are governed by the same

five-factor inquiry.[17]  Here, not only was the Fund in this case under a fiduciary obligation to

---

[16] It should be noted that the district judge could have entered an Order compelling defendant to pay the interim withdrawal liability payments while the arbitration was pending, but instead referred the matter to arbitration so that the arbitrator could "decide the amount of withdrawal liability knowledgeably and expeditiously."  (Dearie Ord. at 8).  Had the court entered such an Order, there would be no question as to whether plaintiff was entitled to fees under the Section 1132(g)(2) standard.

[17] The factors are: (1) the offending party's culpability or bad faith; (2) the offending party's ability to satisfy an attorney's fee award; (3) deterrence; (4) the relative merits of the party's positions, and (5) "whether the action sought to confer a common benefit on a group of pension plan participants."  See Anita Foundations, Inc. v. ILGWU Nat'l Ret. Fund, 902 F.2d at 188.

bring suit to force the employer to make its statutorily required interim payments, but the Fund sought to confer a common benefit on the plan participants by ensuring sufficient funding for the plan. (Compl. ¶ 1). Perhaps even more important, requiring defendant to pay attorney's fees in this case would function as a deterrent for employers contemplating similar strategies in the future. Not only did defendant fail to make interim liability payments as required, but it engaged in a multitude of delay tactics to avoid payment. By asserting that its arbitration demand was timely and pursuing arguments that the Arbitrator found to be unsupported by any legal authority, defendant unnecessarily complicated and extended the arbitration and the instant lawsuit, resulting in a multitude of motions and a corresponding increase in attorney's fees that plaintiff was forced to expend in responding to these motions. Had defendant simply paid the withdrawal liability, or even made the interim withdrawal liability payments without delay, some of the attorney's fees requested by plaintiff would likely have been unnecessary. Thus, assessing fees against defendant will likely serve as a deterrent to other withdrawing employees who consider employing tactics such as those used here by defendant. Cf. Frommert v. Conkright, 223 F. Supp. 3d 140, 148 (W.D.N.Y. 2016) (finding deterrence where "plaintiffs have clearly had the better argument, insofar as the parties' legal positions are concerned").

In determining whether defendant's conduct is culpable or rises to the level of bad faith, courts have looked to whether the losing party's arguments were "exceedingly strained" or "without foundation." ISB Liquidating Co. v. Dist. No. 15 Machinists' Pension Fund ex rel. Bd. of Trs., 127 F. Supp. 2d at 207; see also Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 48 (2d Cir. 2009) (finding error in district court's failure to award fees where evidence in support of prevailing party was "overwhelming" and the losing party's actions relied on evidence that was "not credible" and had "little value" (alterations omitted)). Courts have found bad faith when a

party advances "frivolous and improper arguments" or offers "deliberately false testimony" that reflects malice. <u>Division 1181, Amalgamated Transit Union - New York Emps. Pension Fund v. New York City Dep't of Educ.</u>, No. 13 CV 9112, 2018 WL 4757938, at *3 (S.D.N.Y. Oct. 2, 2018). Not only is bad faith a consideration for purposes of the discretionary standards under Sections 1132(g)(1) and 1451(e), but an arbitrator may also award fees under 29 C.F.R. § 4221.10(c) when the arbitrator finds bad faith.

Here, Arbitrator La Manna found that defendant "failed to cite a single authority in support of its . . . defense, and [another] defense had no basis whatsoever in the statute." (Arb. Dec. at 10). As to the issue of the timeliness of the defendant's request for arbitration, Arbitrator La Manna stated that defendant "offered no proof" in support of its position. (<u>Id.</u> at 17). She further found one of defendant's "accusation[s] [was] untrue" and one of defendant's assertions was "questionable." (<u>Id.</u> at 18). She described defendant's arguments as to which assessment was the correct assessment as "logically inconsistent[,] unsupportable," and "disingenuous." (<u>Id.</u> at 14). She also characterized defendant's actions regarding the assessments as "procedural maneuvering and delays," listing eight separate examples of such actions. (<u>Id.</u> at 14). Moreover, it is clear that despite the clear statutory obligation to make interim payments, defendant "deliberately" waited to make payment, forcing plaintiff to incur unnecessary collection costs. This conduct, coupled with the dilatory tactics engaged in during the arbitration proceeding itself demonstrates that defendant's conduct rises to the level of bad faith.

Courts have found similar actions to be grounds for a finding of bad faith. <u>See Seitzman v. Sun Life Assurance Co. of Canada</u>, 311 F.3d 477, 485 (2d Cir. 2002) (affirming the district court's finding of bad faith where there was "no independent evidence" supporting the non-prevailing party's claims); <u>Fisher v. Aetna Life Ins. Co.</u>, No. 16 CV 144, 2020 WL 5898788, at

*8 (S.D.N.Y. Oct. 5, 2020) (finding bad faith where defendant refused "either to correct the error or accept its consequences for nearly three years" and "caused the parties (and the Court) to waste significant resources litigating this issue"), aff'd, 2022 WL 1193999 (2d Cir. Apr. 22, 2022); Textile Workers Pension Fund v. Findlay Indus., Inc., 56 F. Supp. 2d 386, 387-88 (S.D.N.Y. 1999) (finding bad faith where "core of the [arguments] flow[] from premises not supported by the record" and the non-prevailing party "disregarded essential underlying facts . . . which clearly supported the defendant's position and made the [plaintiff's] position hardly tenable"); see also Finkel v. S.I. Assocs. Co., No. 05 CV 4656, 2008 WL 4376567, at *2 (E.D.N.Y. Sept. 25, 2008) (finding no bad faith where case was "close" and non-prevailing party merely "failed to sustain their burdens of proof").

Given the strong language used by the Arbitrator in her decision, characterizing defendant's actions as "procedural maneuvering," and its arguments as "disingenuous," "unsupportable," logically inconsistent, and even "untrue," the Court finds that plaintiff has sufficiently demonstrated grounds for a finding of bad faith that justifies an award of fees even if either the ERISA discretionary standard[18] or the arbitration standard urged by defendant were to apply.

---

[18] Defendant argues that the Fund should not be entitled to fees as a "prevailing party" under Sections 1132(g)(1) and 1451(e). The Supreme Court has described a "prevailing party" as a party that receives "some success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. at 255. Here, even though there was no express order directing the interim payments, the Fund was ultimately successful in its efforts to recover withdrawal liability payments and successful in its argument that defendant's demand for arbitration was untimely. The Fund was awarded summary judgment in arbitration and defendant was ultimately required to pay withdrawal liability in accordance with plaintiff's Second Assessment. See Lads Trucking Co. v. Board of Trs. of W. Conf. of Teamsters Pension Tr. Fund, 777 F.2d at 1375 (finding that the plaintiff was the prevailing party where it "won the ultimate issue, which is to compel the payment of the withdrawal liability"); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) (finding plaintiff was the prevailing party where arbitrator awarded withdrawal liability). Thus, plaintiff was clearly a prevailing party in this action.

## II. Calculation of Attorney's Fees and Costs

Having determined that plaintiff is entitled to an award of fees and costs, the Court considers the reasonableness of plaintiff's request.

Plaintiff seeks $176,597.00 in attorney's fees and $24,278.95 in costs and disbursements, plus an additional $7,019.00 in fees and $93.00 in costs incurred "in August 2021 in connection with this attorney fee application," for a total of $207,987.95.[19] (See Smith Decl. ¶ 55; Smith Reply Decl. ¶ 21-22). In support of these requests, plaintiff has submitted the Declarations of Jennifer Smith, Esq., who is a member of the Law Offices of Jennifer Smith PLLC ("the Firm"), which represents plaintiff in this action. (See Smith Decl. ¶ 1; Smith Reply Decl. ¶ 1). In accordance with the decision in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney or paralegal and a description of services performed. (See Initial Billing Recs.;[20] Arb. Billing;[21] Add. Recs.[22]).

"It is Plaintiff's burden, as the party seeking fees, to 'offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate.'" Division 1181

---

[19] The Court acknowledges that the attorney's fees requested in this case are significant; they constitute nearly as much as the amount paid in withdrawal liability. The total withdrawal liability in this case was $232,536.00. (Def.'s Mem. at 6). However, courts have noted that fees awarded pursuant to Section 1132(g)(2) need not be proportional, and such a rule is "consistent with the purpose of the provision." United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 289 (3d Cir. 2007); see Marshall v. Anderson Excavating & Wrecking Co., 8 F.4th 700, 713 (8th Cir. 2021) (collecting cases).
[20] Citations to "Initial Billing Recs." refer to plaintiff's counsel's initial billing records, filed Sept. 6, 2021, ECF No. 33-2.
[21] Citations to "Arb. Billing" refer to the American Arbitration Association invoice, filed Sept. 6, 2021, ECF No. 33-13.
[22] Citations to "Add. Recs." refer to plaintiff's counsel's additional billing records, filed Sept. 6, 2021, ECF No. 35-19.

Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d at 621 (quoting LV v. New York City Dept of Educ., 700 F. Supp. 2d 510, 521 (S.D.N.Y. 2010)). When awarding attorney's fees, a court must determine whether the fees requested are reasonable, looking both to the reasonableness of the rates requested and the reasonableness of the hours billed.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).

Courts employ the "lodestar" method in calculating reasonable attorney's fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183; Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002).  Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors.  Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; see Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

A.  Reasonable Hourly Rate

When determining the reasonable rate, the Court looks to what a "reasonable client would be willing to pay."  Bakery & Confectionery Union & Industry Int'l Pension Fund v. Ges Bake Shop, Inc., No. 13 CV 728, 2014 WL 1159821, at *8 (E.D.N.Y. Mar. 21, 2014) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183-84).  The court considers the following factors when determining a reasonable rate:  the time and labor required, whether the questions presented were novel or difficult, the level of skill required to perform the legal services, whether the attorney could have taken on other cases in lieu of

accepting this case, the attorney's customary hourly rate, whether the fee is contingent, any time limitations, the amount at issue and result contained, the experience of the attorney, the desirability of the case, the length and nature of the relationship with the client, and awards in similar cases. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 187 n.3. A court is also to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation.

Id. at 184.

Here, plaintiff's counsel requests a rate of $325 per hour for work performed by counsel prior to January 1, 2021, and $340 per hour for the attorney's hours thereafter. (Pl.'s Mem. at 8). Counsel explains that she has "been litigating for nearly 20 years [with] extensive experience in ERISA litigation." (Smith Decl. ¶ 46). Plaintiff also seeks a rate of $200 per hour for paralegal work performed prior to August 1, 2019, and a rate of $230 per hour thereafter. (Id. ¶ 7). According to plaintiff's counsel, the paralegal in this case, Mr. Lawrence M. McKenna, has worked as a paralegal for 30 years. (Id. ¶ 48). Counsel notes that the rate she would ordinarily charge to new clients is $525 per hour and Mr. McKenna normally charges $255 per hour. (Pl.'s Mem. at 8 n.2).

With respect to counsel's requested fee rate, courts have found similar rates reasonable in this district; indeed, plaintiff's counsel's requested rates are lower than some of the rates previously found reasonable in other ERISA actions. See Bakery & Confectionary Union &

28

Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co, Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly fee of $330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629, at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner in ERISA litigation, including summary judgment motion), report & recommendation adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Finkel v. Fred Todino & Sons. Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner in ERISA withdrawal liability case, but noting that these rates were on the "higher end" for the Eastern District); Finkel v. Architcraft Inc., No. 08 CV 4597, 2010 WL 1257773, at *3 (E.D.N.Y. Feb. 24, 2010) (finding a partner's hourly fee of $370 to be reasonable in an ERISA action); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's fee of $390 per hour reasonable in ERISA litigation).

The Court also notes that courts have allowed for an increase in hourly rates over time. See Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc., No. 18 CV 3668, 2020 WL 5904357, at *3 (S.D.N.Y. Oct. 6, 2020) (allowing for fee increase from $225 per hour to $275 per hour beginning March 1, 2019 when case began in 2018), report & recommendation adopted, 2020 WL 6363960 (S.D.N.Y. Oct. 29, 2020); Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06 CV 3543, 2009 WL 10701955, at *4 (E.D.N.Y. May 27, 2009) (approving attorney's fee award where rates increased during the course of litigation); King v. Unique Rigging Corp., No. 01 CV 3797, 2006 WL 3335011, at *4 (E.D.N.Y. Oct. 27, 2006) (same). Thus, the Court finds plaintiff's counsel's rates reasonable.

However, plaintiff's request for rates of $200 per hour and $230 per hour for paralegal time is high considering the rates that are generally awarded for paralegal work in the Eastern

District of New York.  "Hourly rates for paralegal assistants in the Eastern District range from $70 per hour to $100 per hour," with an average rate of $75 per hour.  Calle v. Pizza Palace Cafe LLC, No. 20 CV 4178, 2022 WL 609142, at *13 (E.D.N.Y. Jan. 4, 2022); see Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *12 (E.D.N.Y. Jan. 14, 2022) (holding that the "requested rate of $150 for . . . paralegals' work is higher than typically awarded in this district" and reducing that amount to $100 per hour); Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Sav. Plan v. Temperini Mech. Inc., No. 18 CV 2596, 2018 WL 8452493, at *7 (E.D.N.Y. Dec. 28, 2018) (noting that paralegal rates are often reduced to $75 per hour), report & recommendation adopted sub nom. Trustees of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc., 2019 WL 2301613 (E.D.N.Y. May 30, 2019).  Accordingly, the Court recommends a reduction in the rate for Mr. McKenna's paralegal services to $100 per hour.

Thus, the Court respectfully recommends awarding counsel a rate of $325 for work performed prior to January 1, 2021, and $340 per hour thereafter, and the paralegal rate of $100 per hour for all hours worked.

B. Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel.  See, e.g., Irving v. G. & G. Instrument Corp., No. 19 CV 1597, 2020 WL 1536325, at *5 (E.D.N.Y. Mar. 31, 2020); LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application, the court should exclude "excessive, redundant or otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)); Gesualdi v. Dove Mason Supply Co., Inc., No. 19 CV 1181, 2020 WL 1538746, at *6

30

(E.D.N.Y. Mar. 11, 2020).  If the court finds "that some of the time was not reasonably necessary

. . . it should reduce the time for which compensation is awarded accordingly."  Louis Vuitton

Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of

New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees

because those requested for responding to motion papers were "excessive"); Jemine v. Dennis,

901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality

and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich

v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012)

(reducing attorney's fees because the attorney's litigation of the suit made apparent his "lack of

experience" and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't, 75 F. Supp. 2d 74,

78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary

and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992)

(finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and

led to duplication of work" and deducting 40% of plaintiffs' lawyers' hours).

  Rather than itemizing individual entries as excessive, the court may make an "across-the-

board reduction, or percentage cut, in the amount of hours."  T.S. Haulers, Inc. v. Cardinale, No.

09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York,

403 F. App'x 626, 630 (2d Cir. 2010)).  Similarly, courts routinely apply across-the-board

reductions for vague entries.  See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.

1998) (affirming district court's 20% reduction in attorney's fees for "vagueness,

inconsistencies, and other deficiencies in the billing records"); Moore v. Diversified Collection

Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) (reducing

attorney's fees by 10% due to the "vagueness and incompleteness" of some of the entries);

Tucker v. Mukasey, No. 03 CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008)
(reducing fees by 30% in part because although some entries were detailed, others were vaguely
worded or inconsistent); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97
(S.D.N.Y. 2000) (concluding that "the vagueness of some of the time records prevents the Court
from determining why plaintiffs were required to expend so many hours on these tasks" and
accounting for this factor by reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290
(E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work
performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir. 1994), cert. denied,
513 U.S. 876 (1994).

As noted above, the Firm has submitted contemporaneous billing records, setting forth
the dates and amount of time during which services were rendered, showing that 470.8 attorney
hours and 97.5 paralegal hours were expended in this matter.  (Smith Decl. ¶ 47).[23]  In addition,
plaintiff's Reply Memorandum requests an award of fees for 23.3 hours spent in August 2021
involved in preparing the instant motion.  (See Add. Recs.).

Plaintiff asserts that its attorney's fee request is reasonable because this case is not one of
the "straightforward, sometimes even formulaic" withdrawal liability cases.  (Pl.'s Mem. at 3).
Instead, plaintiff cites to the two Fund assessments, five requests for review by Pizzirusso, five

---

[23] The Court notes that plaintiff is inconsistent in the initial calculations of hours, requesting only
a total of 470.8 attorney hours and 97.5 paralegal hours in Ms. Smith's Declaration, but seeking an award
of 477.4 attorney hours and 98.6 paralegal hours in Plaintiff's Memorandum in Support.  (Compare Smith
Decl. ¶ 11 with Pl.'s Mem. at 7-8).  It appears that counsel, in calculating the totals in the Declaration,
neglected to include 1.1 paralegal hours billed by paralegal Geoffery Scott, who billed at an hourly rate of
$200.  (See Smith Decl. ¶ 14).  The Declaration also states that Eric Chaikin, Esq., an attorney with the
law firm of Chaikin & Chaikin billed at a rate of $200 per hour for 3.3 hours, for a total of $660.  (Id. at ¶
51).  However, it is unclear whether plaintiff seeks an award of those fees, nor does counsel explain the
disparity in attorney hours between the Memorandum and counsel's Declaration.  Thus, the Court has
considered only the fees requested for Ms. Smith and her paralegal, Mr. McKenna.  Additionally, the
Court has considered the attorney and paralegal hours as calculated in the Declaration—470.8 and 97.5
hours, respectively—rather than the hours requested in the Memorandum.

legal briefs filed by plaintiff in the federal action, and six legal briefs filed in the arbitration proceeding.  (Id.)  Plaintiff contends that the dispute "involved research and briefing of multiple legal issues of first impression."  (Id.)

Plaintiff also notes that Arbitrator La Manna's "impressive, comprehensive and effective set of bench rules" required "unusually detailed and time-consuming preparatory work for arbitration."  (Id. at 4-5; see ECF No. 33-4).  According to plaintiff, since defendant's positions were "so frivolous and so utterly unsupported by existing precedent," "rebutting these assertions was almost like rebutting a phantom," requiring plaintiff to conduct significant legal research. (Pl.'s Mem. at 6-7).  Plaintiff further argues that resolution of defendant's "baseless" legal defenses was "particularly significant to" plaintiff because plaintiff has obligations to Fund participants and relationships with many employers, like defendant, and the resolution of the issues in this case would have an impact beyond this particular dispute.  (Id. at 5).  As a result, plaintiff requests that the Court find the 470.8 hours and 97.5 paralegal hours initially billed, in addition to the 23.3 hours billed in August 2021, in this case to be reasonable.  (See Smith Decl. ¶ 47; Pl.'s Reply at 1-2).

Defendant raises several arguments in opposing the reasonableness of plaintiff's requested attorney's fees, and sets out certain categories of fees that it contends are not subject to recovery.  (See Def.'s Mem.).  In support of this argument, defendant relies on the Declaration of one of its counsel, Richard J. Birmingham, Esq., which breaks plaintiff's fee request into four categories.  (See Birmingham Decl.[24]).  The first category consists of $21,575.99 in fees related to plaintiff's pre-suit calculation of defendant's withdrawal liability and collection efforts, which defendant contends are "unrelated to either the federal district court action or the arbitration,"

___
[24] Citations to "Birmingham Decl." refer to the Declaration of Richard J. Birmingham, Esq., in Support of Defendant's Opposition, dated Aug. 30, 2021, ECF No. 34-2.

and not subject to recovery at all.  (Def.'s Mem. at 15; <u>see</u> Birmingham Decl. ¶ 1).  As for the

$70,955.26 which defendant attributes to the attorney's fees expended on plaintiff's preliminary

injunction motion, defendant contends that fees should not be awarded because the motion was

denied by Judge Dearie.  (Def.'s Mem. at 15).  Third, defendant contends that while $83,364.97

was incurred during arbitration, only $3,770 of the total dealt with substantive issues raised in

arbitration.  (<u>Id.</u>)  The fourth category of fees of $5,246.07 is for fees incurred in filing the

motion for attorney's fees, which defendant contends should not be awarded to plaintiff,

although defendant does not provide any additional reasoning beyond its general assertion that

plaintiff should not be awarded any fees at all in this case.  (<u>Id.</u>)  Thus, defendant appears to

assert that if the Court determines that a fee award is warranted, only the $3,770 in fees dealing

with "substantive legal issues" raised during the arbitration should be awarded to plaintiff.  (<u>Id.</u>

at 19 (arguing that "only $3,770 of the time relates to briefing of the substantive issues," and that

the fees should be limited to that amount if plaintiff's motion is granted)).  Further, counsel for

defendant, Jeff Minzel, Esq., "estimate[s]" that the legal issues in this case, "could be briefed for

less than $50,000," and that plaintiff's conduct in collecting the interim payments was an

"intentional and tactical act that was not made in good faith," citing to plaintiff's "refusal to

recognize [defendant's] clarification of its correspondence" regarding the arbitration date.

(Minzel Decl.[25] ¶¶ 8-9).

     Since defendant takes issue with plaintiff's fee application based on certain categories of

services performed, the Court addresses each category in turn.

---

[25] Citations to "Minzel Decl." refer to the Declaration of Jeff Minzel, Esq., in Support of
Defendant's Opposition, dated Aug. 30, 2021, ECF No. 34-1.

1)  Pre-suit Collection Costs and Fees

The first category of fees and costs challenged by defendant is plaintiff's request for

$21,575.99, as calculated by defendant, in fees incurred in connection with plaintiff's efforts to

collect withdrawal liability payments before the action was filed.[26]  Defendant argues that fees

"related to the Trust's First Assessment and Second Assessment," or fees incurred as a result of

calculating and collecting defendant's withdrawal liability, are not part of "either the litigation or

arbitration" and therefore are not recoverable.  (Def.'s Mem. at 15).

In Peterson v. Continental Casualty Co., the Second Circuit considered the district court's

award of fees and costs where the defendant denied disability benefits owed to plaintiff under an

employee benefits plan that fell within the purview of ERISA.  282 F.3d 112, 115 (2d Cir. 2002).

The court held that pre-litigation fees and costs incurred during the initial claims process, before

suit had been filed in district court, were not recoverable.  Id. at 121-22.  Relying on the statutory

language of Section 1132(g)(1), the court reasoned that Congress, by using the word "action" in

the statute intended that fees and costs be "limited to judicial suits or to broadly cover

administrative proceedings related to the judicial suit."  Id.; see also Cann v. Carpenters' Pension

Trust Fund, 989 F.2d 313, 316 (9th Cir. 1993) (finding that ERISA "limit[s] the award to fees

incurred in the litigation in court"); Chandhok v. Companion Life Ins. Co., 556 F. Supp. 3d

---

[26] Plaintiff argues that there is no support for defendant's assertion that collection costs are
excluded from an attorney's fee award noting that they are "specifically mentioned as compensable" by
Section 1132(g)(2).  (Pl.'s Reply at 6).  However, there is no language in Section 1132(g)(2) that states
that collection costs are compensable.  Section 1132(g)(2) references an award of "the unpaid
contributions," interest, liquidated damages, attorney's fees and costs, and "such other legal or equitable
relief as the court deems appropriate."  29 U.S.C. §§ 1132(g)(2)(A)-(E).  Further, plaintiff cites only one
case that allowed the plaintiff to recover fees where the attorney billed hours to "prepare the letters to
Defendant [] to address his withdrawal liability assessment and to provide 60-day notice to cure
withdrawal liability amount prior to litigation; [and] Prepare withdrawal acceleration letter to Defendant. .
. ."  Pension Plan v. Parr, 2019 U.S. Dist. LEXIS 225090, at *28-29 (N.D. Cal. Dec. 20, 2019).  However,
the court in Parr provided no analysis as to why it was awarding fees for those entries and this Court
therefore finds the case unpersuasive.

1192, 1228-29 (D.N.M. 2021) (concluding that "allowing fees for pre-litigation work runs counter to ERISA's purpose"); LaBarbera v. Rockwala, Inc., No. 06 CV 6641, 2007 WL 3353869, at *2 (E.D.N.Y. Nov. 8, 2007) (holding that "pre-filing work" was not recoverable in an ERISA action).

Indeed, this Court was unable to find any cases in which the court awarded fees for pre-filing work that was not undertaken in furtherance of forthcoming litigation.  See Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d 1210, 1213-14 (11th Cir. 2009) (denying pre-litigation fees incurred in administrative proceeding because the work was not "performed in furtherance of traditional litigation"); Anderson v. Proctor Gamble Co., 220 F.3d 449 (6th Cir. 2000) (denying attorneys' fees to plaintiff who prevailed in securing benefits in an administrative proceeding where there was no review in the courts); Quirk v. Village Car Co., No. 19 CV 217, 2020 WL 908111, at *8 (D. Me. Feb. 25, 2020) (denying pre-litigation fees where defendant paid withdrawal liability before plaintiff brought suit); Aminoff v. Ally Gargano, Inc., No. 95 CIV 10535, 1996 WL 675789, at *4 (S.D.N.Y. Nov. 21, 1996) (holding that "[u]nder the plain language of [Section 1132(g)(1)], plaintiffs cannot recover fees incurred in settling the dispute because no litigation was ever instituted"); Hamilton v. Bank of New York (Delaware), No. 94 CV 436, 1995 WL 447659, at *6 (D. Del. July 18, 1995) (allowing for recovery of pre-complaint settlement discussions when settlement discussions failed and plaintiff subsequently filed suit, but noting that plaintiff was unable to recover for fees incurred in pre-suit administrative proceedings).

However, the Supreme Court has noted that "prefiling tasks may be for the litigation if they are both useful and of a type ordinarily necessary to advance the litigation," citing "[i]nvestigation, preliminary research, drafting of demand letters, and working on the initial

complaint" as potential areas for recovery.  Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps., 571 U.S. 177, 189-90 (2014) (alterations and citations omitted).  Thus, the Court has analyzed plaintiff's billing invoices and finds that while certain pre-filing collection and calculation fees incurred in determining the withdrawal liability Assessments are not recoverable in this case, other fees were incurred in connection with tasks that were ultimately useful for the litigation.  Although the Assessments were "necessary" to advance the litigation in the sense that they provided the basis for establishing defendant's withdrawal liability and determining the amounts due, plaintiff would have been required to incur these fees regardless of whether it eventually brought suit.  As another court has stated, "if [plaintiff's] theory is adopted, it would mean that every claimant could contend that, although performed [before litigation commenced], all of the work was really undertaken in anticipation of later litigation."  Hermann v. Aetna Life Ins. Co., No. 14 CV 9302, 2015 WL 13917123, at *5 (C.D. Cal. Nov. 23, 2015); see Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1011 (8th Cir. 2004) (denying pre-litigation fees and noting "if an ERISA plan beneficiary prevails [pre-litigation], there will be no judicial action at all").

Defendant has cited to Invoices 169303, 171796, 172307, 172973, 174113, 13, 44, 47, 59, 70, 82, 88, and 104, without specifying which entries are not compensable as prefiling work. (See Birmingham Decl. ¶ 1.A).  While it is true that entries related to the drafting of the Complaint in this action do not begin until Invoice 115 (see Initial Billing Recs. at 25), certain entries contained within the Invoices cited by defendant are compensable prefiling tasks.  (See, e.g., id. at 2 (discussing legal challenge to "Segal Blend method of calculating withdrawal liability"), 5 (billing for "review[ing] and analyz[ing] statute")).  Further, many of the entries deal with the arbitration, for which, as set forth infra, plaintiff is entitled to recover fees.  (See,

37

e.g., id. at 6-7).  Having carefully examined each of the invoices, the Court finds that 23.9

attorney hours and 16.6 paralegal hours incurred prior to the filing of the Complaint were

incurred in calculating and collecting defendant's withdrawal liability that would have been

expended regardless of suit being filed.

Accordingly, it is respectfully recommended that plaintiff's requested hours be reduced

by 23.9 attorney and 16.6 paralegal as non-compensable pre-filing hours.

     2)  Preliminary Injunction Motion

Defendant also opposes plaintiff's request for $70,955.26 in fees expended in connection

with plaintiff's motion for preliminary injunction.  Defendant contends that any fees incurred "in

an attempt to stay the arbitration" are not recoverable because "the Trust was not a prevailing

party on this issue either before this Court or in arbitration."  (Def.'s Mem. at 15).

In Kassim v. City of Schenectady, the Second Circuit observed that a court retains the

authority to reduce a fee award by reason of the plaintiff's "partial or limited success."  415 F.3d

246, 256 (2d Cir. 2005).  The Supreme Court in Hensley v. Eckerhart has also explained that in

analyzing a fee request, "the most critical factor is the degree of success obtained."  461 U.S. at

432.  The Court distinguished between cases that present "distinctly different claims for relief

that are based on different facts and legal theories," and other cases that "present only a single

claim" or which "involve a common core of facts or will be based on related legal theories."  Id.

at 434-35.

Thus, where the case involves different unrelated claims, the congressional intent was to

treat those unrelated claims as if they had been raised in separate lawsuits and limit fee awards

only to those successful claims on the theory that counsel's work on an unrelated unsuccessful

claim was not expended in pursuit of the successful claim.  See L.I. Head Start Child Dev.

_Servs., Inc. v. Economics Opportunity Comm'n of Nassau Cty., Inc._, 865 F. Supp. 2d 284, 296-97 (E.D.N.Y. 2012) (citing _Hensley v. Eckerhart_, 461 U.S. at 435), _aff'd_, 710 F.3d 57 (2d Cir. 2013), _and amended_, 956 F. Supp. 2d 402 (E.D.N.Y. 2013). By contrast, where the case involves a common core of facts or related legal theories, it becomes more difficult to allocate attorney hours expended on a claim-by-claim basis. _Id._ Further, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably expended. . . ." _Id._ The court should focus on the overall results obtained by plaintiff and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." _Id._ Said differently, where "plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." _Lunday v. City of Albany_, 42 F.3d 131, 134 (2d Cir. 1994).

In this case, while the district court denied plaintiff's motion for a preliminary injunction, plaintiff was successful in defeating defendant's motion to dismiss the action and ultimately achieved the full benefit of what it sought in instituting this action – namely, full payment of the withdrawal liability owed to the Fund and a determination that the defendant's arbitration demand was untimely. Rather than raising a wholly separate claim, the plaintiff's request for preliminary injunctive relief was closely intertwined with the claim that defendant was delinquent in making its interim withdrawal payments. Indeed, defendant's motion to dismiss was filed as part of its opposition to plaintiff's motion for a preliminary injunction. (See ECF No. 10).

Further, by seeking to enjoin the arbitration and push for an immediate ruling on the request for interim payments, plaintiff was addressing the same core facts and legal questions

that were presented in the basic claim before the court.  (See Dearie Ord. (addressing both motions simultaneously and relying on the same set of facts)).  Much of the research conducted and the efforts expended in briefing the motion to dismiss and the motion for preliminary injunction can also be seen as informing the plaintiff's position before the arbitrator and therefore would have been required and useful in any event.  See Culwick v. Wood, No. 15 CV 5868, 2021 WL 7906500, at *22 (E.D.N.Y. Sept. 9, 2021) (awarding fees expended on unsuccessful claims, noting that the work done was "work that counsel would have needed to perform regardless" of whether the successful claim was the only claim); see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 486 (9th Cir. 2015) (noting that "where attorney work proves beneficial to a successful claim, district courts should generally award these fees in full, even if the work is also useful to an unsuccessful claim" (citations omitted)); LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 529 (S.D.N.Y. 2010) (awarding fees incurred in unsuccessful proposal because "lawyers may be compensated 'for advancing plausible though ultimately unsuccessful arguments'" (citation omitted)).

Thus, the Court declines to recommend a reduction in the fees expended by plaintiff in connection with the motion for preliminary injunction.

### 3)  Fees Incurred in Connection With The Arbitration

Defendant next argues that the $83,364.97 in fees "incurred in arbitration where no fees were awarded by the arbitrator," are not recoverable.[27]  (Def.'s Mem. at 15).  As discussed supra

---

[27] Defendant appears to concede that the $3,770, as calculated by defendant, that was involved in briefing the substantive issues before the arbitrator would be recoverable if this Court determines that attorney's fees generally are recoverable.  (Def.'s Mem. at 15).  However, defendant provides no explanation for how it reached the number $3,770; indeed, although one of defendant's attorneys calculates the fees spent on substantive issues as constituting only $3,770, one of defendant's other attorney's states that the issues could have been briefed for $50,000.  (Compare Minzel Decl. ¶ 9, with Birmingham Decl. ¶ 1.C).  Moreover, although the Birmingham Declaration points to specific invoices as involving the substantive issues, it appears to select entries somewhat randomly.  For example, the

at 16 n.13, plaintiff's motion is not a motion to modify the Arbitrator's Decision since plaintiff

did not request a fee award from the arbitrator, relying instead on the court's order indicating that

plaintiff was not relinquishing any rights to seek a fee award and could return to the court after

the arbitration to seek fees.  (See Dearie Ord. at 7-8).  Defendant has cited no authority to

support its position that plaintiff was required to first seek fees from the arbitrator.  Further,

given that plaintiff's fee request encompasses more than just a request for fees incurred during

arbitration, plaintiff would have had to return to the court for the remainder of the fee request in

any event.

     As explained in Peterson, fees incurred in connection with an administrative remand

ordered by the court are compensable under ERISA.  Peterson v. Continental Cas. Co., 282 F.3d

at 119.  Whether the court retains jurisdiction over the action is also critical to whether fees can

be awarded.  In Peterson, the court analyzed two Supreme Court cases, noting that "the Court

authorized only the award of fees incurred during an administrative proceeding that occurred

after a court of law assumed jurisdiction over the case."  Id. at 121 (citing Pennsylvania v.

Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 550, 561 (1986), and Sullivan v.

Hudson, 490 U.S. 877, 890 (1989)); see also Cann v. Carpenters' Pension Tr. Fund for N.

California, 989 F.2d at 317 (citing Delaware Valley and Sullivan and noting that the Supreme

Court awarded fees in those cases where the fees were "incurred after the court action"); Delisle

---

Birmingham Declaration points to Invoice 199 and an entry stating that plaintiff's attorney edited
document indexes.  (See Birmingham Decl. ¶ 1.C; Initial Billing Recs. at 45).  Apart from the fact that
this does not appear to be "substantive work," defendant does not cite to another entry that bills for
creating the indexes.  (Initial Billing Recs. at 45).  Nor does defendant cite to work that this Court would
consider substantive, such as the multiple entries for researching and preparing the legal briefing,
reviewing defendant's submissions, and researching case law.  (See id. at 46-47).  Thus, because
defendant provides no support for how it reached the calculation of $3,770 for briefing on "substantive"
issues, and it appears that defendant contests an award of fees in its entirety, the Court finds defendant's
arguments regarding the substantive hours expended to be unpersuasive.

v. Sun Life Assur. Co. of Canada, No. 06 CV 11761, 2007 WL 4547884, at *5 (E.D. Mich. Dec.

19, 2007) (noting that the Delaware Valley and Sullivan line of cases "reason that where a court

remands a case for further fact-finding necessary to the case and resumes jurisdiction after that

remand, attorney's fees are recoverable" and awarding fees); cf. UAW International v. TRW

Auto. U.S. LLC, 850 F. App'x 929 (6th Cir. 2021) (denying fees incurred in an arbitration

proceeding where the district court referred the case to arbitration and dismissed the federal

action, failing to retain jurisdiction over the subsequent fee request).  Other courts have denied

fees where the parties consented to arbitration without the need for a court order.  Ponce de Leon

v. International Longshoremen's & Warehousemen's Union-Pac. Mar. Ass'n Welfare Plan, 704

F. App'x 700, 701 (9th Cir. 2017) (finding "no ERISA 'action' properly before the court");

Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d at 1213-14 (denying fees incurred in "claim

reassessment process" because the "district court did not remand [plaintiff's] case for further

administrative action or order the parties to engage in the claim reassessment process").

  In this case, however, the district court Ordered the parties to arbitration on October 2,

2020.  Although the defendant had demanded arbitration before this action was filed, the court's

arbitration Order was issued in the context of this action.  Indeed, because the propriety of the

arbitration request was at issue before the court, the arbitration was initially held in abeyance

pending the court's decision on plaintiff's motion to enjoin the arbitration and defendant's

motion to dismiss.  (See Dearie Ord.).  Thus, unlike Ponce de Leon, here the court ultimately

compelled the parties to proceed with arbitration over plaintiff's objection.  Moreover, the court

explicitly retained jurisdiction, unlike in UAW International, noting that plaintiff would not be

prejudiced by the denial of injunctive relief because plaintiff would be able to return to the court

to obtain attorney's fees.  (See id. at 7).  Thus, nothing in the court's Order precludes plaintiff

from recovery of reasonable attorney's fees in connection with the arbitration proceeding.

### 4) Fees and Costs Incurred as a Result of the Instant Attorney's Fees Motion

Plaintiff requests a total of $12,265.07 in fees and costs relating to this attorney's fee

motion.[28]  Although it is somewhat unclear, it appears that defendant objects to these fees as part

of its general argument, addressed supra, that plaintiff should not receive any fee award

whatsoever, but defendant does not raise any specific arguments as to this category of fees in

particular.  However, since this Court finds that plaintiff should be awarded fees, plaintiff may

therefore recover the attorney's fees incurred in connection with this fee motion.  See Struthers

v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *9 (E.D.N.Y. Sept. 25, 2013)

(awarding attorney's fees in connection with "preparing reply papers in support of [plaintiff's]

motion for attorney's fees"); see also Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d

Cir. 1996) (noting that the Second Circuit previously "held that attorneys' fees for the

preparation of the fee application are compensable" and awarding fees for the motion); Rappa v.

Connecticut Gen. Life Ins. Co., No. 03 CV 5286, 2005 WL 6244543, at *4 (E.D.N.Y. June 28,

2005) (same).

### C. Recommended Award in this Case

Having considered defendant's objections to each of the specific categories of fees, the

Court turns to the reasonableness of the hours billed in each category.  With respect to plaintiff's

request for pre-litigation fees, the Court has examined the plaintiff's billing records and

determined that 16.6 paralegal hours and 23.9 attorney hours expended are not recoverable.

---

[28] In addition to the $5,246.07 in fees originally requested, as calculated by defendant, plaintiff, in its Reply Memorandum, now seeks an additional $7,019.00 incurred after plaintiff's initial attorney's fee submissions, for a total of $12,265.07.  (See Pl.'s Reply at 2; Smith Reply Decl. ¶ 21).

Thus, the Court has reduced the requested number of hours by the amount of prelitigation fees that plaintiff incurred through its efforts to calculate and collect the interim withdrawal liability payments in accordance with this Court's analysis.  (See discussion <u>supra</u> at 35-38).

With respect to the remaining three categories, the Court finds that there is no reason to deny outright plaintiff's request for fees incurred in connection with the motion for preliminary injunction, during the arbitration, or for fees incurred in briefing this motion as urged by defendant.  (<u>See</u> discussion <u>supra</u> at 38-43).  In examining the reasonableness of the hours expended in these three categories, the Court recognizes, among other things, the "number of legal briefs and exhibits submitted by the parties, the detailed procedural requirements mandated by the arbitrator, the nature of the legal defenses raised," and the importance of prevailing on the issues to plaintiff.  (<u>See</u> Smith Decl. ¶ 44).

Defendant does not seem to dispute that the issues in this case were novel and extensively litigated; indeed, defendant still maintains that Arbitrator LaManna's decision was "fundamentally incorrect."  (Def.'s Mem. at 17; Minzel Decl. ¶ 9 (noting that the positions taken by the parties "involve[d] unsettled areas of the law" and were "of significant importance" to defendant)).

However, in reviewing the billing records, it appears that some of plaintiff's billed hours were excessive or redundant.[29]  Thus, the Court respectfully recommends that plaintiff's request

---

[29] While the Court need not itemize the redundant or excessive hours, <u>see</u> <u>T.S. Haulers, Inc. v. Cardinale</u>, 2011 WL 344759, at *3, there are a number of entries that appear to be excessive for the work performed or redundant.  As examples, counsel spent 9.4 hours drafting the Complaint, in addition to 4.1 hours reviewing it.  (Initial Billing Recs. at 25, 28).  Mr. McKenna twice arranged for service of papers on June 9, 2020 and June 11, 2020 and again served the Complaint on June 12, 2020.  (<u>Id.</u> at 28-29).  Additionally, both counsel and the paralegal list hours for coordinating service and the filing of plaintiff's preliminary injunction motion.  (<u>See id.</u> at 32-34).  Counsel and the paralegal also billed plaintiff for 3.6 hours on technical e-filing issues.  (<u>Id.</u> at 33).  Further, Mr. McKenna spent 12.1 hours preparing documents for the arbitration "in accordance with arbitrator's extremely detailed submission rules" in addition to 13.8 hours also later spent on preparing documents for arbitration.  (<u>Id.</u> at 46-47).  Although

for fees be reduced by 10%.  See Quinn v. Nassau Cnty. Police Dep't, 75 F. Supp. 2d at 78

(reducing fees by 20% and 30% for unnecessary and redundant time).

Thus, this Court respectfully recommends that plaintiff's counsel should be awarded a

total of $143,540.10 in attorney's fees per this Court's calculations as set forth in the table

below.

| Individual | Requested Rate | Requested Hours | Total Requested Fees | Recommended Rate | Recommended Hours (reduced for pre-filing fees)[30] | Recommended Hours (reduced by 10%) | Total Fee Award |
|---|---|---|---|---|---|---|---|
| Attorney pre-January 1, 2021 | $325 | 450.9 | $146,542.50 | $325 | 427 | 384.3 | $124,897.50 |
| Attorney post-January 1, 2021 | $340 | 34.6[31] | $11,764.00 | $340 | 34.6 | 31.14 | $10,587.60 |
| Paralegal all periods | $230 | 106.1[32] | $24,403.00 | $100 | 89.5 | 80.55 | $8,055.00 |
| **TOTALS** | n/a | 591.6 | $182,709.50[33] | n/a | n/a | 495.99 | $143,540.10 |

D.  Costs

Under ERISA, plaintiffs who prevail on enforcement actions are entitled to recover

---

this list is not comprehensive, the Court finds it reasonable to reduce the total fee award by 10%.

[30] As noted above, the Court has subtracted an additional 16.6 paralegal and 23.9 attorney hours as non-compensatory pre-litigation hours.  The Court subtracts this amount from the pre-January 1, 2021 fee award since these entries occurred during this time period.

[31] The Court has reached this number by adding the number of hours attributed to counsel post-January 1, 2021 to the number of hours attributed to counsel in plaintiff's request for attorney's fees incurred in connection to the instant motion.  (See Smith Decl. ¶ 12 (citing 19.9 hours); Add. Recs. (citing 14.7 hours)).

[32] The Court has reached this number by adding the number of hours attributed to Mr. McKenna in plaintiff's request for attorney's fees incurred in connection to the instant motion to the hours originally requested.  (See Smith Decl. ¶ 13 (citing 97.5 hours); Add. Recs. (citing 8.6 hours)).

[33] As noted previously, plaintiff requested fees for additional individuals that are not included in this Court's calculations and plaintiff's hours requested were inconsistent.  Thus, this number differs from plaintiff's overall requested award.

reasonable costs.  See 29 U.S.C. § 1132(g)(2)(D).  Filing fees are specifically included in the

statute, and therefore plaintiff here may recover the $400 in filing fees in this case.  See 29

U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010)

(awarding $818.53 in costs for filing fees, service, postage, and photocopying); see also Gesualdi

v. Dove Mason Supply Co., Inc., 2020 WL 1538746, at *7; Phillip Morris USA, Inc. v. Jackson,

826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court);

Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29,

2013) (same).

  Plaintiff has also requested costs associated with the legal research performed in this

case, which have previously been awarded in ERISA cases.[34]  See National Integrated Grp.

Pension Plan v. Dunhill Food Equip. Corp., 2014 WL 887222, at *10 (citing cases awarding each

type of aforementioned costs, including legal research, and awarding $11,243.84).

  Additionally, plaintiff requested an award of arbitration fees of $22,425.00.  (Smith Decl.

¶ 49; Arb. Recs.).  However, courts have typically awarded arbitrator's fees when the CBA or

arbitrator's award specified an award of the arbitrator's fees.  Trustees of the Loc. 807 Lab.

Mgmt. Health Fund v. Express Haulage Co., No. 07 CV 4211, 2008 WL 4693533, at *1

(E.D.N.Y. Oct. 23, 2008) (awarding arbitration fees as part of costs pursuant to CBA); Trustees

of the Nat'l Org. of Indus. Trade Union Ins. Trust Fund v. Davis Grande Co., No. 03 CV 6229,

2006 WL 1652642, at *4 (E.D.N.Y. Jun. 9, 2006) (awarding petitioner arbitrator's fee when it

---

[34] To the extent that defendant has raised concerns regarding attorney's fees incurred during the pre-filing period, only one of plaintiff's requested costs associated with legal research occurs on one of the invoices disputed by defendant.  (See Initial Billing Recs. at 19).  Since this Court found that plaintiff's counsel performed recoverable work including the entry where counsel "[r]eview[ed] and analyze[d] J.Pizzirusso argument as to timeliness of arbitration" and counsel's entry for "[p]repar[ing] and serv[ing] Demand for Employer to Provide Legal Authority" on defendant, the research costs associate with this invoice are recoverable.  (See id. at 19-20).

was included in the arbitrator's award).  Since the Court has not been provided with the CBA or Trust Agreement in this case, it is unclear whether the CBA provides for an award of arbitrator's fees.  Moreover, nothing in the arbitrator's award specifies whether the arbitrator's fees are recoverable, and plaintiff has provided no other support for the request for reimbursement of the arbitrator's fees.  Thus, the Court respectfully recommends that plaintiff's request for an award of the costs of the arbitration fee be denied.

Accordingly, the Court recommends that plaintiff be awarded a total of $2,853.95 in costs, consisting of the filing fee of $400 and $2,453.95 for online research.

<u>CONCLUSION</u>

Accordingly, the Court respectfully recommends that plaintiff be awarded $143,540.10 in attorney's fees and $2,853.95 in costs for a total of $146,394.05.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").  The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 9, 2022
     Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
Chief United States Magistrate Judge
Eastern District of New York

47